The final case this morning is No. 241729, Cascades Branding Innovation LLC v. Aldi, Inc. Okay, Mr. Flashbart. Good morning, Your Honors, and may it please the Court. This case is before the Court on appeal from a dismissal under Rule 12b-6, with prejudice, of an unamended complaint for patent infringement. The District Court below failed to do a proper analysis of patent eligibility under Alice, did not hold defendant Aldi to the clear and convincing burden it had to carry on its motion, and rather shifted the burden on the motion to dismiss to the plaintiff, and then finally declined to permit Cascades to even attempt to amend the complaint. The single most telling indication of Aldi's and the Court's failure to perform a proper analysis of patent eligibility under Alice is the articulation of the abstract idea used during the Step 1 analysis. This articulation was wildly overbroad, led to an incorrect conclusion at Step 1, and was not balanced in any way by a sliding scale analysis of the claim terms in Step 2. You talk a lot about this sliding scale as a well-settled legal framework. I don't think you cite any cases for it. Can you help me out? We cited Cosmo Key, Your Honor. Cosmo Key v. Duo Security, that's 15F 4th 1091. That's our authority for the sliding scale. Thank you. Sure. Judge Maldonado's articulation of the abstract idea was collecting and displaying information about a device location and the nearby businesses selling a particular brand of service. That's at Appendix 19. Aldi's is even broader, referring to collecting and displaying geographical information. That's at Appendix 176. It relies on this same articulation before this Court, Aldi does. Aldi uses that articulation in their response, the red brief, at 3, 7, 8, and 11, among other locations. Both of these articulations of the abstract idea are incredibly wide in scope and capture whole categories of collection and display technology not encompassed by the claims of the gold patents. These articulations are so broad as to preclude any innovation or patenting in the space of display of geographic information. And were the claims so broad, were they actually that broad, preemption and capture of an abstract idea would be a legitimate concern in this case. They would be very real. But they are not, and their lack is telling in a proper analysis under Alice. Instead, these claims call for a much narrower scope and a clear improvement over existing technology in the space of mapping using a concrete device to implement the improved process. Claim 1 of the 395 patent, that's our proxy claim in this case, calls for the predicate elements of displaying, using a device, a first image associated with a first brand, and receiving from a user of the device an indication of selection by the user of the first image. Then, and only once the brand image has been selected, does the claim describe the mapping process. That process includes identifying the location of the device independently of any location specifying input provided by the user, and then providing to the user using the device a first map image. As described further in the claim, this map image displays to the user, without further location identifying input, a map image showing nearby locations where those branded services or goods associated with that image-selected brand are located. In short, the user's selection of the brand image triggers a mapping process, which results eventually without location specifying input by the user in display of a map showing nearby locations of the brand. Uniquely in this case, this was identified by the patentee in the specification as an improvement over existing display technologies. That was identified in our brief at page 20, and in the appendix in the specification, appendix 40, columns 14, lines 1 through 22. The patentee specifically identified the flawed systems over which this was an improvement. He laid them out, and that they did not include this advance. That's in appendix 34, column 1, lines 12 to 53 in the same page in our brief. This is different from any other case in which a finding was made that the subject matter of the claims was patent ineligible. It seems to me the facts of this case are pretty similar to the facts in the electric power versus Alstrom case. Tell me why I'm wrong. Let me, that's a great question, Your Honor. Electric power deals with, and I'm going to make sure I've got the right technology. There's so many of the, you know. I mean that case talked about, you know, collecting, analyzing, displaying data about an interconnected power grid. Right. But the court said these are just abstract ideas of gathering, analyzing, and displaying. Right. In that context, and here you have the general ideas of displaying, receiving, identifying a location. There's nothing in the claim that explains how this is accomplished or the workings of a computer or the workings of a circuit that would accomplish this general idea. And isn't that a problem under our current 101 precedent? Let me, I'm going to take those in order. I'm going to start with the electric power. I'll say that this case, Your Honor, is very different from the electrical power group under Step 1 because here we have, as I just alluded to, the inventor in the specification listing out the specific library of prior art technologies that needed speed and ease of use improvement. Okay. That's, he identified, he said these are the three versions of showing a map and how we get there that exist that this is going to be better than. Okay. That's absolutely missing in electric power group. Here we also have an undisputed. Those things are not in the claim, Brian. The identification of the prior art? No, that's not in the claim, Your Honor. That's in the specification. We're saying here's the problem, here's the technological problem which we are going to offer a technological solution for. But what I'm getting at is the claim, you know, it's a broad statement of the functioning of this method, but there's no explanation that I found in the claim as to how it's accomplished. I think it's narrower than that breadth that Your Honor is alluding to because the claim is saying, hey, this is a process that we understand the steps of how to do and here are the prior art pieces that exist that we can use to do these steps, right? And here is a novel way in which to do that, which is to say, first, we have an entire mapping process that is initiated, commenced, using the selection of a branded image, right? That is nowhere in any prior art. That's nowhere in anything, nor was it well understood by others to be done, right? You see that completely absent from any of the prior art. But why isn't that just an abstract idea? Say, let's use a logo instead of just a button that says A. Why is that not an abstract? Well, because in the context of the display technology, it's very concrete. You're looking at a brand and you're using that or a branded item, and you're using that to begin the process, right? Once I start that, that is, in this art, a concrete selection, right? You have to have the physical device. You have to have it with you, right? Some of these other features that come into later play and elements require the existence of physical device, right? Because if you don't have a physical device, your location cannot be determined because you have nothing to determine it with, right? This is why this whole abstract idea prong of the test is so difficult, because it's almost like we're arguing in the abstract. There are just very few definitive markers along the way that guide the analysis as to whether this is really patent eligible or not. But that's the problem we're stuck with. We have to apply the abstract idea test, and we've got case after case after case that says that if all you're doing is expressing ideas that are well-known and recognized, like gathering, displaying, receiving, these are just abstract ideas until you set forth some structural application or some specific way of doing it that might take it out of the realm of being abstract. I think Your Honor has put his finger on exactly the problem with zooming out as far as Aldi and the court have here when they start to describe the abstract idea, right? When you get down to saying the abstract idea is gathering and displaying information, you are eliminating an entire category of useful inventions in any computer art. Because at its heart, any computer art invention can be described as gathering information and displaying information, right? That's all you do. When someone types on the keyboard, the computer gathers information from them. So when you draw the abstract idea this big, you run into the problem of now you have to incorporate all of the unarticulated as that great idea, that wide idea, not that great idea, I simply mean large, that large idea. All those separate factors come into play at step two, right? I get that sometimes a clue to whether at step one we have an abstract claim is whether you can articulate a sort of brick-and-mortar real-world comparison.  And here, of course, they talk about the shopping mall visitor looking at a map. And you respond to that, and I just don't fully understand your distinction, so maybe you can help me with it. You respond in the great brief at 10 that their analogy ignores the limitation of starting the process with the selection of a brand-identifying image, and indeed ignores the concept of locating a particular brand entirely as stationary mall maps show locations for all brands. I'm not sure how that's responsive to their argument. Sure. Let's compare, and I see I'm into my rebuttal time, but I want to answer your honest question. Let's compare the mall map with the technology in the claim. I step up to a mall map. The mall map knows where I am because the mall map is fixed in location, so there's no need for a determination of the location of the user. The mall map is sitting there. I now look at the mall map, and the mall map shows me every store in the mall. Not only the Starbucks, not only the Burger Kings, not only, you know, pick your brand. So when I contrast that, and by the way, if I move throughout the mall, the map isn't going to change. Like, let's say I pick up a copy of that map, or I take a picture of it and use that. That map isn't going to change based on where I am in the mall, right? It's going to have no— I think I understand, but aren't all those distinctions just basically inherent in automation, basically a mall map on a computer, and if that's all you've invented, we know it's not patentable. Well, the mall map on the computer is very different, because let's say I bring up the mall map on the computer. That, again, I don't commence—I just bring up the map, right, in whatever manner that I do. I don't commence the process by selecting a brand via a branded associated image. Once I do that, now that map that the invention shows me does not contain all stores. It contains only branded stores, right? That's an advantage to the person—both the person who's looking for the brand, and it's an advantage to the brand if they're providing you, in the case of the infringement in these cases, an app where only their branded locations are shown. Okay, so the difference there is partly that, and also that you simply cannot locate the user without the rest of the technology. I don't want to take all your time. No, no problem at all. I see I have two minutes left, so I'll see you guys again in 15. Thank you. Mr. Lee. Thank you, sir. Good morning, Your Honors. May it please the Court. I'm Robert Lee, Counsel for Eppley Aldi. The District Court properly found all claims of the three asserted patents ineligible under 101, and that decision should be affirmed. Looking at step one of the analysis, looking at a representative claim, claim one of the 395 patent, it is plainly directed to the abstract idea of collecting and displaying geographic information of nearby business locations and displaying those to the user. I don't think we're overgeneralizing it. I think both the District Court and we in our papers properly characterized the scope of what this method purports to cover. Looking at the Vitero decision, Vitero v. Draftkings, 104 F. 4th, 1350, the Court talks about well-settled indicators of abstractness and goes through the litany of the Court's cases in this space. First, again, we've got claim language using very broad functional terms, displaying, receiving, identifying, providing. Those results-focused terms have no language conveying any sort of specificity as to why that displaying, providing, collecting type of steps are compelled to any sort of general technology or even specific technology. This Court has recognized that claims of this functional drafting are almost always found to be patent-eligible. As the Court judge noted, you have the electric power case, you have Vitero, you have Sanderling, Affinity Labs, the Move Real Estate v. Real Estate Alliance case. There's a litany of cases about using geographic information, collecting geographic information and displaying it to a user in different formats in broad functional language to be abstract. So here we have an abstract claim. Now looking to Step 2, is there any sort of inventive concept that changes this? And we submit there is not. Because again, you have to find something that's more than being well understood, routine or conventional activity. Again, there is no discussion within the claim language of any sort of functionality to enable this process. The patent specification talks about generic hardware used in general computing purposes. Looking at appendix page 35, it's the specification for the 395 patent. Column 4, lines 32 through 51, it talks about the device used for this process. It may, for example, be a mobile phone, a wireless communication device, a PDA, a computer, a laptop. The display is an electronic display or an output means of a type commonly found on mobile phones or small portable computing devices. Going to appendix page 37, column 7 of the specification, location means is any mechanism, process, or means that enables identification of the device's location. It goes on to talk about GPS or satellite functionality. Cascades does not, in the specification at all, suggest any of this conventional equipment is used in any unconventional way. It's simply using conventional off-the-shelf computer components to practice this process. What we did hear about is this use of a brand image. That's new, this idea of a brand image to start the process. That's different than anything anybody's ever considered before in their lives. As Judge Lynn noted, what is a brand image other than a logo? It's a trademark. The patent specification, this is appendix page 30, which shows figures 1A and 1B of the specification, shows a Nike swoosh, McDonald's golden arches, the Coca-Cola bottle with the name Coca-Cola on it. That's a brand image. But brand owners have been using their own brand images to identify their businesses and provide some indication of location for decades, if not hundreds of years. It's not surprising that you would use a brand image to associate a location with a brand because that's what the brand owners themselves do. You saw the gray brief on the first page. Maybe the very first point suggests you've waived the ability to make this argument you're making now about the novelty and the importance of starting with a brand image because you didn't address it in the red brief. What's your response to that? Yes, Your Honor, two points. One, Cascade's argument is this idea that it starts with this process of the user deciding that's going to be how they search. The claim reads the device that shows it, so there is no user thought process. That wasn't an argument that I think was presented directly in the opening brief. I think counsel belabored this argument in the reply brief, but it wasn't an argument that was carried in the principal brief as something that is the transformative element that transformed this abstract claim into somehow a non-abstract claim. So I don't think we waived it, Your Honor. Again, because I think this is something that was highlighted. They picked something that we didn't address ad nauseum to address ad nauseam so they could make this argument, but I don't think we abdicated our argument on that. What about the supposed sliding scale from Cosmo Key that you also didn't address that? I did not, Your Honor, because I don't think that is a binding, relevant analysis that applies in this case. I think we've got Patero, we've got Sanderling, we've got Move, we've got a whole bunch of other cases that this Court recognizes abstract claims for what they are being abstract, looking at the transformative nature of them or lack of transformation when, again, you've got the supposed transformative issue itself just doubling down on the abstract idea to the abstract claim. So I don't think there is a sliding scale argument or test that somehow applies here specifically given this Court's extensive authority. Wouldn't it have been better to give them a chance to file an amended complaint? They make a number of allegations about novelty, more particularly, I guess, non-routine, non-conventional, non-well understood, for lack of a better word. Wasn't the District Court pretty abrupt in concluding that it would have been futile to even have a chance to amend? I think the District Court was quick to that, but I don't think it was abrupt or unfounded. The claim language speaks for itself, and this Court has routinely upheld District Courts in similar situations. As the Court noted in Sanderling, no amendment to a complaint can alter what a patent itself states. The Court looked at the claim language, looked at its abstractness, looked at the specification and the fact that it, I believe, and I now believe it says in the Court's order, found all of the common components used in their common conventional ways and said, what else is left? If they wanted to cite more evidence from the specification, they certainly could. It was in the record before this Court. They didn't cite anything. They've raised this issue of extrinsic evidence, but I'm not sure what relevance extrinsic evidence would be to a clear abstractness issue on the face of the patent. Without articulating how or why or what aspect of the claim language all of this evidence would come into support and how that would change anything, I don't think they've been deprived of an opportunity. I think the Court saw that as candidly for the Hail Mary it was and decided it was unnecessary. If there's no further questions, I'll cede the remainder of my time. Would you concede that it has been conventional for a long, long time to have brand maps, store locations of a particular brand? You mean like a physical map? Yes, I would concede that, Your Honor. You go to Shell, they give you a map that says here's all the shells. You pull it out of your glove box and take a look. Those exist. They predate computers, I'm fairly certain. I can't testify from personal experience. I'll address only a few quick points because I don't have much time. I will say that the extrinsic evidence in this case that we would offer on an amended complaint would go specifically to the preemption issue because preemption obviously is one of the key issues in any Alice analysis. Are we preempting the basic building blocks of technology? If you look at these claims in their detail, there is no way that we are preempting the basic building blocks of technology. During the licensing campaign on this portfolio, we have been shown multiple non-infringing alternatives that still achieve exactly the same objectives of collecting and displaying geographic information. For example, someone who collects the location by asking you to give your zip code. Someone who says type in your address instead of doing it without user specifying input. We've seen versions where they show a list of locations instead of a map. All of those are variants of this that would be captured by the very broad abstract ideas articulated by the court. The opportunity to address those in an amended complaint I think would be absolutely appropriate. We list all of those in our final brief. I'll conclude very briefly to simply say this. The how that makes this narrow enough to be subject matter eligible is that selection of the brand image. That is the piece of this that says here's a very narrow advance over existing technology in this area, not a sweeping broad abstract idea. It's a specific idea. I'll draw your attention to a recent case,  which is just two weeks ago. This court ruled in PowerBlock Holdings Inc., the iFit Inc., and I've got the Lexus site, which is 2025USAppLexus20229 and 2025Westlaw2301853 that you cannot use the fact that limitations were in the prior art to find abstractness at step one. That is very applicable here, especially in light of the arguments made by my learned friend. With that, Your Honor, I'll thank you for your attention today. Thank you.